COMBS, COMMISSIONER OF INSURANCE *v.*

GLEN FALLS INSURANCE CO.

5-3278                                    375 S. W. 2d 809

Opinion delivered March 2, 1964.

*Bruce Bennett,* Attorney General, By *Jerry L. Patterson,* Asst. Atty. Gen., for appellant.

*McMillen, Teague & Bramhall, Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

GEORGE ROSE SMITH, J. The appellees, two out-of-state insurance companies doing business in Arkansas, brought suit for a judgment declaring Act 527 of 1963 (Ark. Stat. Ann. § 66-2302 [Supp. 1963]) to be invalid on the ground that it was not enacted by a three-fourths vote in each house of the legislature. The defendants, the Insurance Commissioner and the Attorney General, contended that a simple majority vote, which is all the act actually received, was sufficient for its passage. The chancellor held that a three-fourths majority was required. He therefore declared the act to be invalid.

The main question is whether Act 527 increased the rate of privilege taxes levied against foreign insurance companies. If so, a three-fourths vote was required by Amendment 19 to the Arkansas Constitution. This amendment, adopted in 1934, provides that none of the rates for property, excise, privilege, or personal taxes then levied shall be increased by the General Assembly except by the vote of three-fourths of the members elected to each house.

In 1934, when the amendment was approved, the premium tax against foreign life and health and accident insurance companies was $2\frac{1}{2}\%$, and that against other foreign insurers was $2\%$. Pope's Digest, §§ 7965-66. These rates of taxation were continued in force through the years and were eventually embodied in § 69 of the Insurance Code—Act 148 of 1959.

On its face Act 527, now under attack, unquestionably increases the rates that were in effect in 1934. The act amends § 69 of the Insurance Code to provide that the premium tax shall be computed "at the following rates:" For life and disability companies "the tax rate" shall be

3%; for other insurance companies "the rate of tax" shall be 2½%. Thus the act, in language wholly free from ambiguity, increases each tax rate by one half of 1%.

The appellants, in contending that Act 527 does not involve an increase in the rate of taxation, rely upon other provisions in the act which in substance permit any insurer to pay its premium tax at the old rate if it has made capital investments in Arkansas equal to half the total reserves upon its Arkansas insurance. It is argued that the sole purpose of the act was to compel foreign companies to invest their money in this state and that the increase in the premium tax is actually a penalty to be exacted from those companies that are unwilling to make investments here.

The short answer to this contention is simply that this is not what the legislature said. The act makes no mention whatever of a penalty. To the contrary, it refers explicitly and repeatedly to rates of taxation. Furthermore, subsection 8 of section 1 declares that any foreign insurer may "at its option" elect either to pay the higher tax or to make the specified investments and pay the tax at the lower rate. Hence a company might, as a matter of right, choose not to make the local investments, but it would nevertheless be compelled to pay its premium tax at the increased rate. If we should sustain the appellants' position this provision in Amendment 19 might as well not have been adopted, for a simple majority of the legislature could increase the rate of any tax merely by affording the taxpayer some unacceptable alternative to paying the higher rate.

A secondary contention is that inasmuch as Act 527 contains a severability clause we should sustain the compulsory investment provisions even though the tax increase must be held to be invalid. In this view the sole effect of the act would be to require all out-of-state insurers to make the specified local investments.

This contention is unsound. A severability clause is frequently an aid to the courts in the construction of a

statute, but, in the oft-quoted words of Justice Brandeis, it is not "an inexorable command." *Dorchy* v. *Kansas,* 264 U. S. 286, 68 L. Ed. 686, 44 Sup. Ct. 323. While such a clause deserves reasonable consideration it should not be paid undue homage. Sutherland, Statutory Construction (3d Ed.), § 2408. For example, if an act should levy a new tax and create a new agency for its collection, no one could doubt that the invalidation of the tax would also do away with the collection agency, despite the presence of a severability clause. In *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45, we declared an entire act to be invalid, in the face of such a clause, because we concluded that if the legislature had known in advance that part of the act was unconstitutional it would not have enacted the rest. That is really the test.

It is evident that Act 527 was intended to put into effect a single indivisible proposal. Insurers were offered the choice of paying a higher premium tax or of making extensive investments in Arkansas. These alternatives are complementary and interdependent. To enforce the one without the other would be such a perversion of the legislative intent as to be equivalent to the enactment of a statute that the General Assembly did not itself see fit to adopt. We must conclude that the chancellor was right in holding the entire act to be void.

Affirmed.